**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **VOGUE TYRE & RUBBER COMPANY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:17-CV-3198-S (BK)** |
| | § | |
| **SALVADOR ARTURO RIVAS,** | § | |
| **d/b/a BOSS HOGG CUSTOMS,** | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to District Judge Scholer's *Order of Reference*, Doc. 18, and 28 U.S.C. §

636(b), *Plaintiff's Motion for Default Judgment and Permanent Injunction*, Doc. 17, has been

referred to the undersigned magistrate judge for a recommended disposition.  As detailed below,

Plaintiff's motion should be **GRANTED**.

## I. BACKGROUND

Plaintiff Vogue Tyre and Rubber Company brings this action for trademark infringement

and unfair competition under the United States Trademark Act ("Lanham Act") against

Defendant Salvador Arturo Rivas d/b/a Boss Hogg Customs.  Doc. 1 at 3.  Plaintiff is a company

specializing in the design of high-performance automobile tires, has sold tires under the name

"Vogue" since 1922, and has owned the registration to the mark since 1926 (the "Vogue Mark").

Doc. 1 at 2-3.  Plaintiff's most successful tire design features "a gold annular stripe or band

located between the white annular band on a white sidewall tire and the tread of the tire" (the

"Gold Stripe Design").  Doc. 1 at 2.  Plaintiff has sold tires featuring the Gold Stripe Design

since 1996, and owned the federal registration to the design since 2005, which provides Plaintiff

with exclusive rights to promote and sell products bearing the design.  Doc. 1 at 2-3.  Plaintiff

sells its products across the country and has invested significant resources in developing, promoting, and protecting the goodwill surrounding the Vogue Mark and Gold Stripe Design. Doc. 1 at 2. As customers have come to associate the Vogue Mark and Gold Stripe Design with Plaintiff and its products, they are of substantial value to Plaintiff. Doc. 1 at 3.

Defendant operates a vehicle customization business in Dallas, Texas, in which he "paints decorative designs onto customers' tires" and advertises those designs online. Doc. 1 at 3-4. As relevant here, Defendant offers a "Mustard and Mayo" design that mimics the Gold Stripe Design and is even marketed using the Vogue Mark. Doc. 1 at 4-5; *see* Doc. 1-2 at 2-5; Doc. 1-3 at 2-15. However, Defendant is not currently authorized or approved to use the Vogue Mark and Gold Stripe Design. Doc. 1 at 5. Defendant had constructive and actual notice of Plaintiff's rights in and to the Vogue Mark and Gold Stripe Design at the time he commenced the complained of activities. Doc. 1 at 5. Defendant did not respond to several letters demanding that he cease infringing on the Vogue Mark and Gold Stripe Design. Doc. 1 at 6.

Based on these allegations, Plaintiff asserts claims of trademark infringement and unfair competition under the Lanham Act. Doc. 1 at 6-11. Although summonses were served on Defendant in January 2018, Doc. 11, he neither answered nor otherwise responded to Plaintiff's Complaint. Consequently, at Plaintiff's request, the clerk entered default as to Defendant. Doc. 15; Doc. 16. Plaintiff now moves for default judgment on all its claims and seeks to permanently enjoin Defendant from continuing his allegedly infringing activities. Doc. 17 at 6, 14.

## II. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure sets forth the conditions governing the entry of a default judgment. A default judgment is appropriate following three events: (1) default, which occurs when a defending party fails to plead or otherwise respond to a complaint;

2

(2) the clerk's entry of default, when such default is established by affidavit or otherwise; and (3) the plaintiff's application to the court for a default judgment after the entry of default. FED. R. CIV. P. 55(a). All three pre-requisites have been met in this case.

Notwithstanding a clerk entry of default, the court is not compelled to enter a default judgment. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) ("[D]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.") (internal quotation marks and citation omitted). As such, entry of a default judgment is committed to the judicial discretion of the district judge. *Lewis*, 236 F.3d at 767.

In determining whether the entry of default judgment is warranted, a court considers three factors. *United States v. 1998 Freightliner*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). The first is whether a default judgment is procedurally warranted. *Id.* In making this determination, a court examines whether: (1) material issues of fact exist; (2) there has been substantial prejudice; (3) the grounds for default are clearly established; (4) the default was caused by a good faith mistake or excusable neglect; (5) a default judgment would be unduly harsh; and (6) the court would think of itself obliged to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Next, the court considers whether the plaintiff has plead a sufficient basis for a default judgment. *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A defaulting defendant is deemed to admit all well-pleaded facts in the plaintiff's complaint, but not facts that are not well-pleaded or conclusions of law. *Id.* Finally, the court must consider the relief, if any, to which the plaintiff is entitled. *1998 Freightliner*, 548 F. Supp. 2d at 384.

3

## III. ANALYSIS

### A.    Default judgment is procedurally warranted

On balance, the *Lindsey* factors demonstrate that default judgment is procedurally warranted in the case *sub judice*.  First, because Defendant has not responded to Plaintiff's Complaint, no material facts are in dispute.  *Nishimatsu*, 515 F.2d at 1206.  Second, Defendant's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests."  *Gandy v. Lynx Credit*, No. 3:14-CV-0369-B, 2014 WL 6805501, at *2 (N.D. Tex. Dec. 3, 2014 (Boyle, J.) (citing *Lindsey*, 161 F.3d at 893).  Third, Defendant properly served and has had more than seven months to respond or otherwise explain his failure to do so, thus the grounds for default are clearly established. *See e.g.*, *Elite v. KNR Grp.*, 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent a letter to the court explaining why he failed to appear).  Fourth, there is no evidence before the court demonstrating that the default was caused by good faith mistake or excusable neglect.  Fifth, Plaintiff seeks only relief to which it is entitled under the Lanham Act, thereby mitigating the harshness of a default judgment.  *See* 15 U.S.C. § 1116; *cf. Henson v. Young 3, LLC*, No. 3:14-CV-905-B, 2015 WL 356890, at *2 (N.D. Tex. Jan. 28, 2015) (Boyle, J.) (holding that the harshness of a default judgment was mitigated by plaintiff only seeking the relief she was entitled under the FSLA).  And sixth, the Court has not been made aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants.

### B.    There is sufficient basis for judgment in the pleadings

Upon review, Plaintiff's well-pleaded allegations support the entry of a default judgment against Defendant for federal trademark infringement and unfair competition.  Doc. 1 at 6-11.

4

**1. Trademark Infringement and Unfair Competition Claims**[1]

To prevail on a trademark infringement claim, Plaintiff must show (1) it has a legally protectable mark and (2) Defendant's use of that marks creates a likelihood of confusion as to the source, affiliation, or sponsorship of Defendant's services. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). "To be protectable, a mark must be distinctive, either inherently or by achieving secondary meaning in the mind of the public." *Id.* A mark's registration with the United States Patent and Trade Office ("PTO") constitutes prima facie evidence that the mark is valid and "meet[s] the threshold requirement that the plaintiff must possess a protectable mark." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998); 15 U.S.C. §§ 1057(b), 1115(a). In determining whether there is the likelihood of confusion, courts consider the "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Id.* (internal quotation marks and citations omitted). While a court may take each factor into account, the presence or absence of any one factor is not dispositive. *Id.* Indeed, a finding of the likelihood of confusion "need not be supported even by a majority of the . . . factors." *Id.* (internal quotation marks and citations omitted).

---

[1] Claims for trademark infringement and unfair competition under the Lanham Act are governed by the same standards. *See* 15 U.S.C. § 1125(a); *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004). As such, the Court's analysis of Plaintiff's trademark infringement claim applies equally to its unfair competition claim.

Here, Plaintiff provides proof that the Vogue Mark and the Gold Stripe Design were registered with the PTO and, thus, legally protectable marks. *Elvis Presley Enters., Inc.*, 141 F.3d at 194. Thus, the Court next considers the likelihood-of-confusion factors. *Am. Rice, Inc.*, 518 F.3d at 329.

### 1. Strength of the Marks

A trademark's strength is determined by the classification of the mark and the degree to which it is recognized in the marketplace. *Am. Rice*, 518 F.3d at 330. Marks are classified as: generic, descriptive, suggestive, or arbitrary and fanciful, with "the strength of a mark, and its protection, increase[ing] as one moves away from generic and descriptive marks toward arbitrary marks." *Id.* (citing *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 346 (5th Cir. 1984)). Marketplace recognition depends on advertising, length of time in business, public recognition, and uniqueness. *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 698-99 (S.D. Tex. 2009) (citation omitted). The Vogue Mark and Gold Stripe Design are best classified as arbitrary, and thus strong, as there is nothing about the word "vogue" or the Gold Stripe Design that suggests any connection or association with customized tires. *See Oleg Cassini, Inc. v. Cassini Tailors, Inc.*, 764 F. Supp. 1104, 1109 (W.D. Tex. 1990) ("The strength of the mark depends upon its degree of arbitrariness in relation to the products or services with which it is used."). Additionally, the fact that Plaintiff has promoted and sold automobile tires under the Vogue Mark and tires bearing the Gold Stripe Design since 1922 and 1966, respectively, connotes a high degree of marketplace recognition. *Am. Rice*, 518 F.3d at 330. Accordingly, Plaintiff's marks are entitled to the broadest protection against infringement.

### 2. Similarity of Designs

The similarity of the marks is determined by "comparing the marks' appearance, sound, and meaning." *Elvis Presley Enters.*, 141 F.3d at 201. When comparing the marks, the "overall impression" and context of the mark, including the manner in which a mark is used, is relevant. *See Armstrong Cork Co. v. World Mkts. Inc.*, 597 F.2d 496, 502 (5th Cir. 1979). The key inquiry "is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Elvis Presley Enters., Inc.*, 141 F.3d at 201 (citation and internal quotation marks omitted).

In this case, Plaintiff demonstrates that the Gold Stripe Design and the design used by Defendant are essentially identical in appearance, Doc. 1 at 3-5. *See Am. Rice, Inc.*, 518 F.3d at 343 ("for picture and design marks . . . similarity of appearance is controlling") (citation omitted). As the manner of use for both designs involves tires, the "overall impression" is one of great similarity. *Armstrong*, 597 F.2d at 502. Additionally, Defendant's use of Plaintiff's brand name in advertising is identical in appearance and sound to the Vogue Mark, Doc. 1-2 at 2-5. *Elvis Presley Enters.*, 141 F.3d at 201. Therefore, this factor supports a finding of a likelihood of confusion.

### 3. Similarity of Products and Services

"The greater the similarity of products and services, the greater the likelihood of confusion." *Exxon Corp. v. Tex. Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980). Direct competition is not a prerequisite to finding similarity of products and services. *See Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 669-70 (5th Cir. 1975). When the products or services do not compete, "the confusion at issue is one of sponsorship, affiliation, or connection." *Elvis Presley Enters., Inc.*, 141 F.3d at 202.

7

Plaintiff is well-known for selling customized luxury automobile tires and accessories. Doc. 1 at 1-2. Defendant does not sell tires, but rather offers a tire customization service. Doc. 1 at 3. However, both operate within the vehicle customization industry and, more specifically, the tire customization industry. *See Exxon Corp.*, 628 F.2d at 505 (finding similarity of products and services when one primarily offered petroleum products and one primarily offered vehicle repair service). Moreover, as a part of his painting service, Defendant advertises that he can "Vogue out" any tire. Doc. 1 at 5; Doc. 1-2 at 2-5. Thus, Defendant's use of the Vogue Mark together with a design virtually identical to the Gold Stripe Design, creates a likelihood of confusion as to the sponsorship, affiliation, or connection between Defendant's service and Plaintiff's products. *Elvis Presley Enters., Inc.*, 141 F.3d at 202. Accordingly, this factor supports a finding of a likelihood of confusion.

### 4. Identity of Retail Outlets and Customers

"Dissimilarities between the retail outlets for and the predominant consumers of plaintiff's and defendants' goods lessen the possibility of confusion, mistake, or deception." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980). Both Plaintiff and Defendant appeal to individuals interested in automobile customizations, specifically "high quality, customized tires." Doc. 17 at 13. Thus, their customer bases are similar. However, the parties' retail outlets are dissimilar, as it is unlikely that customers would mistake Defendant's place of business – the only outlet through which he offers his services – as a Vogue retailer. *See Exxon Corp.*, 628 F.2d at 506 ("It would be difficult to mistake defendant's car care center for an Exxon service station.").

### 5. Similarity of Media and Advertising Used

The likelihood of confusion increases when both parties use similar approaches to marketing and advertising.  *See Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 640 (N.D. Tex. 2009) (Kinkeade, J.).  However, even if companies do not advertise in identical channels, the fact that they target the same class of buyers can support an inference that they "use similar advertising and marketing channels."  *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009).  Thus the fact that Plaintiff and Defendant target the same class of buyers – individuals interested in high quality, customized tires – supports an inference that they use similar advertising and marketing channels.  *Id.* Accordingly, this factor supports a finding of a likelihood of confusion.

### 6. Defendant's Intent

In some cases, if "a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone may be sufficient to justify the inference that there is confusing similarity."  *Exxon Corp.*, 628 F.2d at 506 (citations omitted).  Here, as alleged by Plaintiff, Defendant was aware of the Vogue Mark and Gold Stripe Design prior to commencing the complained of activity.  *Doc. 1 at 5.*  Thus, his use of the Vogue Mark together with his replication of the Gold Stripe Design strongly suggests an intent to profit off the goodwill associated with the marks.  *Exxon Corp.*, 628 F.2d at 506; *see also Elvis Presley Enters.*, 141 F.3d at 203 ("Defendants' use of "The Velvet Elvis" mark in their advertising evidences an intent to market the [business] by relying upon the drawing power of Elvis[.]").  Thus, this factor supports a finding of a likelihood of confusion.

9

**7. Actual Confusion**

Courts usually find that actual confusion is the best evidence of likelihood of confusion.

*Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir. 1975).  Nevertheless, actual confusion is

not necessary to support a finding of infringement.  *Am. Rice, Inc.*, 518 F.3d at 333.  Plaintiff

concedes that it has no evidence of actual confusion, thus this factor does not support a finding of

a likelihood of confusion. Doc. 17 at 12; *Am. Rice, Inc.*, 518 F.3d at 333.

**8. Degree of Care Exercised by Potential Purchasers**

Degree of care exercised by potential purchasers is often correlated to the price of the

product or service.  *See e.g.*, *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v.*

*Smack Apparel Co.*, 550 F.3d 465, 483 (5th Cir. 2008) ("Where items are relatively inexpensive,

a buyer may take less care in selecting the item, thereby increasing the risk of confusion.").  The

advertised costs of Defendant's services are between $190 and $340, when discounted on sale.

Doc. 1-3 at 3.  Although Plaintiff does not offer any evidence regarding the price of its tires, the

Court can infer that the cost of purchasing a Vogue tire bearing the Gold Stripe Design is more

than the cost of purchasing Defendant's painting service.  However, "a high price tag alone does

not negate other indicia of likelihood of confusion, especially if [as is the case here,] the goods or

marks are similar."  *Xtreme Lashes*, 576 F.3d at 231 (5th Cir. 2009) (citing *Fuji Photo Film Co.*

*v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 596 (5th Cir. 1985)).  While, this factor is

neutral, on balance, all factors considered weigh in favor of a finding of a likelihood of

confusion.

Accordingly, the Court finds that Plaintiff has sufficiently plead facts showing it holds

legally protectable marks and that Defendant's use of the marks creates a likelihood of

10

confusion. Therefore, Plaintiff is entitled to default judgment on its federal trademark infringement and unfair competition claims.

## C.    Relief Requested

The relief requested in the Complaint limits that available from a default judgment. FED. R. CIV. P. 54(c). Here Plaintiff seeks only injunctive relief, as requested by its Complaint. Doc. 1 at 11-12; Doc. 17 at 14. The court must next "determine whether the relief requested is appropriate under the governing law." *Chevron Intellectual Prop., L.L.C. v. Allen*, No. 3:08-CV-98-O, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009) (O'Connor, J.).

Pursuant to the Lanham Act, the court has the power to grant injunctive relief in order to prevent violation of the trademark holder's rights. *See* 15 U.S.C. § 1116(a). A permanent injunction is appropriate if Plaintiff can demonstrate that (1) it has suffered an irreparable injury; (2) no adequate remedy at law (e.g., monetary damages) exists to compensate for that injury; (3) the threatened injury to the plaintiff outweighs any damage to the defendant; and (4) the injunction will not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Upon review, injunctive relief is appropriate in this case.

First, the same evidence that supports a likelihood of confusion also demonstrates the requisite irreparable harm, as does Plaintiff's inability to control the quality of Defendant's services. *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 765 (N.D. Tex. 2013) (Lynn, J.). Second, Plaintiff's lack of control over the quality of Defendant's services also demonstrates that monetary damages cannot adequately compensate Plaintiff for Defendant's infringement. *Id.*; *see also Pro Hardware, Inc. v. Home Ctrs. of Am., Inc.*, 607 F. Supp. 146, 154 (S.D. Tex. 1984) (finding loss of control made calculation of compensatory damages difficult). Third, the balance of hardships weights in favor of Plaintiff. Indeed, Plaintiff has demonstrated the effort that has

11

gone in to promoting its marks, thus any harm to Defendant (who would only be prevented from infringing on the marks and not from operating his business) is minimal by comparison. *See Selander*, 932 F. Supp. 2d at 765. Finally, granting an injunction serves the public interest by continuing to require "strict adherence to intellectual property law." *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997) (Sanders, J.), *aff'd*, 168 F.3d 486 (5th Cir. 1999).

## IV. CONCLUSION

In light of the foregoing, it is recommended that Plaintiff's *Motion for Default Final Judgment*, Doc. 17, be **GRANTED**, and that Default Judgment be entered in favor of Plaintiff.

**SO RECOMMENDED** on July 18, 2018.


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

12

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

13